## Walter W. Wilcox, Appellant, v. Eleanor Andrews et al., Appellees.

### Gen. No. 14,515.

1. APPEALS AND ERRORS—*when finding of court not disturbed.* If the record does not show upon what ground the judge decided a cause his finding will not be disturbed if there is any ground upon which it may be sustained.

2. APPEALS AND ERRORS—*when finding of court not disturbed.* A finding of fact by the trial court will not be disturbed on review as against the weight of the evidence unless clearly and manifestly so.

3. BROKERS AND FACTORS—*when not entitled to commissions.* If a broker is a mere volunteer or the agent of the purchaser, he cannot recover a commission from the owner for a sale effected; his employment by the owner must be established as a condition to recovery.

Assumpsit. Appeal from the Municipal Court of Chicago; the Hon. JOHN H. HUME, Judge, presiding. Heard in this court at the March term, 1908. Affirmed. Opinion filed June 8, 1909.

**Statement by the Court.** This is an appeal from a judgment of *nil capiat* and for costs against the plaintiff, entered by the Municipal Court of Chicago on December 10, 1907. The cause was an action in *assumpsit*, brought by the plaintiff, Wilcox, for commissions claimed by him to have been earned by him in procuring a tenant for premises at 192 and 194 South Clark street in the city of Chicago, belonging to the defendants.

The declaration, in addition to the common counts, contained two special counts.

The first one, after reciting that the business of the plaintiff was that of a real estate broker, alleged that the defendants on February 5, 1907, represented that they owned the premises at Nos. 192 and 194 South Clark street, in Chicago, and engaged the services of the plaintiff to procure a tenant for said building, and agreed in consideration of plaintiff procuring a tenant to pay plaintiff as his commissions and compensa-

tion for such services, if he succeeded in procuring a tenant who would lease said premises for a term of seven years, the sum of five per cent on the first year's rental, to be paid by said tenant, and one per cent of the aggregate rental to be paid by said tenant for the last five years of said term; that afterwards the plaint- iff, in pursuance of the agreement, on March 1, 1907, procured as tenant the Wacker & Birk Brewing & Malting Company, who leased the premises for seven years at an annual rental of $10,600 a year, whereby the defendants became indebted to the plaintiff in the sum of $1,500.

The second special count differed from the first only in stating the agreement to be that the defend- ants should pay the plaintiff for his services the regular and usual commissions paid to brokers in the city of Chicago for similar services, and that such regular and usual commissions for a lease of the character described were five per cent of the rental for the first year of said term and one per cent of the aggregate rental to be paid for the last five years.

The defendants all pleaded the general issue to the declaration, and gave notice under the plea of special matter of defense, namely: That said premises de- scribed in the declaration were leased to the Wacker & Birk Brewing & Malting Company on a proposition submitted by one Fitzgerald, a real estate agent of Chicago, to whom was paid the commission on said lease as established by the Chicago Real Estate Board of Chicago, amounting to the sum of $1,060, and that the defendants had no knowledge that the plaintiff had been instrumental in presenting said property to said Wacker & Birk Brewing & Malting Company, when the proposition submitted by Fitzgerald was ac- cepted by these defendants and when the said commis- sions were paid to said Fitzgerald.

The cause was submitted to the court without a jury, and the court found the issues for the defend- ants and gave judgment as before indicated on that finding.

The assignments of error in this court are on rulings on the evidence, and that the finding and judgment of the court were against the law and the evidence.

W. E. O'NEILL, for appellant.

WEART & WEART, for appellees.

MR. JUSTICE BROWN delivered the opinion of the court.

The appellant in this cause states the questions involved to be these:

First.   Were the powers of Henry E. Mason as agent of the defendants sufficiently broad to enable him to bind the defendants in the employment of a broker?

Second.   Was Walter W. Wilcox the procuring cause of the leasing of the premises in question to the Wacker & Birk Brewing & Malting Company?

Upon these questions he makes an elaborate and forceful argument, which, on the other hand, the appellees attempt to controvert.   The matter, however, on which we place the decision of the case is dismissed by the appellant with the statement that "The uncontradicted evidence shows, and the defendants concede, the employment by Henry E. Mason of the plaintiff in this suit."   To which, however, appellees rejoin: "Appellees do *not* concede and the evidence does *not* show that appellant Wilcox was employed by Henry E. Mason to procure a tenant for appellees, as stated in the opening paragraph of appellant's argument."

We are forced by an attentive consideration of the record to the conclusion that the position of the appellees is correct to this extent at least—that the record does not show that a finding of the trial judge that Wilcox was not employed by Mason would be manifestly against the weight of the evidence.   It is plain that even assuming both that Henry E. Mason was the agent of the defendants with powers suffi-

ciently broad to enable him to bind the defendants in the employment of a broker, and that Walter W. Wilcox was the procuring cause of the leasing of the premises in question to the Wacker & Birk Brewing & Malting Company (controverted propositions on which we do not pass), the conclusion does not of itself follow that the plaintiff should recover from the defendants. For that result there must be also an exercise of the said powers of Henry E. Mason and an employment, express or implied, of the plaintiff by him. The broker must have been authorized to act as the agent of the defendants. Hafner v. Herron, 165 Ill. 242.

In that case the Supreme Court says: "There must be an employment to constitute a broker the agent of a vendor," etc. And this is only common sense and right reason. Since the ground on which the trial judge, sitting without a jury, decided this case, does not appear from the record, we should not disturb his judgment unless on this point, as well as the others, we can say it is clearly against the evidence. We cannot do so. From a comparison of the testimony of Mason, Wessels and Wilcox, conflicting as it is, it would appear rather to us that Wilcox was acting as a volunteer, whose services were not accepted, or as the agent of the Wacker & Birk Brewing & Malting Company, and not of the defendants. In neither of these cases would the defendants be liable to him because they afterward leased the premises to the Wacker & Birk Brewing & Malting Company.

The question is well discussed in the opinion by the Branch Appellate Court of this district in Morton v. Barney et al., 140 Ill. App. 333. "There is no warrant for the claim," says Mr. Justice Freeman in that opinion, "that where a broker goes to an owner, asking and receiving the price of a piece of property, he thereby becomes the agent of the owner entitled to commissions, if the owner subsequently disposes of the property. Nor can a broker, by letters of his own addressed to a possible purchaser, or by writing an

owner that he has offered the property to such proposed purchaser, make a contract of employment for himself entitling him to commissions. It takes two to make a contract of that kind, and an owner is under no obligation to respond to every letter he may receive from a real estate broker whom he has not employed.''

In the present case, Mr. Mason on the witness stand distinctly repudiated any employment whatever of the plaintiff. His testimony was to a consistent refusal to make such employment, and that the nearest approach to such an employment was nothing more than a mere permission to Wilcox to submit in writing, as agent for would-be lessees, such propositions as he desired to. But Mr. Mason says he told Wilcox that neither he (Wilcox) nor he himself (Mason) had authority to offer the property for lease.

In answer to the question whether "he did not tell Wilcox that if he (Wilcox) did not stop sending in letters and advertising the property he (Mason) would take the property away from him," Mason answered that he did not make any such statement "because he had never given the property to him."

Mr. Wilcox gives a different version of his conversations with Mr. Mason, but on an analysis of his testimony we cannot find a place where he explicitly swears to any employment. His state of mind as to the employment which he claims seems to be somewhat at least derived from a theory that a failure to respond to the letters of a broker stating that he was offering the premises to third parties would estop the owners from denying such employment. Yet in answer to a demand for a categorical statement of a conversation with Mason over the telephone, he says that Mason said: "I do not want you to offer it to every broker in town, and advertise it, or write any more letters in regard to it. I won't recognize you at all."

The conversations he swears to with Olson, Mason's clerk (and which Olson practically admits), do not

help him materially, it seems to us, both on account of Olson's lack of authority in the matter, which Wilcox must have recognized when he found himself merely referred by Olson to Mr. Mason, and because the conversations in themselves amounted to nothing more than an absolute failure to agree on terms of employment, even if Olson had had any authority about it. "I told him" (Wilcox) "that he would *probably* have to be satisfied with one-half the commission," Olson says, but that was after he (Olson) had told Wilcox that he did not know even whether the stores were rented, and would have to refer him to Mr. Mason. When the defendants' counsel asked Olson whether he had any directions from Mr. Mason on the question of the commission, the plaintiff's counsel objected to the question and it was excluded.

Mr. Kinahan, an employe of Wilcox and a witness called *in rebuttal* by the plaintiff, certainly testified to a conversation with Mr. Mason which would, if believed, have justified the court in holding that Wilcox had been employed by Mason.

After stating that on a visit to Mr. Mason with Mr. Wilcox, they were informed that the place was rented, he said that he (Kinahan) had been there two or three times to get some kind of expression from Mr. Mason "as to what price was on the store and also as to the commission there would be," and got no satisfaction. Then he was asked these questions and gave these answers:

"Q.  What do you mean by that?

A.  Well, he would not talk to me at all. Up to one visit before this he did not give me any price or the price of any commission. The visit before this he gave me prices and the commission he would pay.

Q.  Tell me about the previous visit.

A.  He just told me the price was $12,000, and I am authorized to pay you full board rates."

If the trial judge had found the issues for the plaintiff, this testimony would have prevented our disturb-

ing such a finding on the question of the fact of employment; but as he did not, we cannot assume that he believed it. It is entirely inconsistent with Mason's testimony, and it does not accord well even with the testimony of Wessels and Wilcox. It is strange that this testimony, if relied on, should not have been produced originally instead of being postponed to the case in rebuttal.

Inasmuch, therefore, as we do not hold that a conclusion of the trial judge that there was no employment of the plaintiff by Mason would have been so clearly and manifestly against the weight of the evidence as to justify us in setting it aside, nor that we can assume from the record that such finding on this fundamental factor of the plaintiff's case was not the ground of the judgment for the defendants, we must decline to disturb the disposition of the cause which the Municipal Court has made. Its judgment is accordingly affirmed.

*Affirmed.*